**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4223**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TIMOTHY TYRONE GREEN,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (CR-04-111)

Submitted: December 22, 2005          Decided: January 24, 2006

Before NIEMEYER, LUTTIG, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Donald H. Howe, Sr., HOWE & WYNDHAM, L.L.P., Charleston, South Carolina, for Appellant. Jonathan S. Gasser, Acting United States Attorney, Alston C. Badger, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Appellant Timothy Green appeals the sentence he received after pleading guilty to selling crack cocaine. For the reasons that follow, we affirm.

## I.

In the summer of 2002, a task force comprising federal and state law enforcement officers initiated an investigation into a drug trafficking ring of individuals living in Colleton County, South Carolina. This investigation led law enforcement to conclude that Timothy Green had been involved in selling drugs.

In August of 2003, Ryan North, a co-defendant of Green, volunteered to cooperate with law enforcement. During an interview with law enforcement agents, North stated that in the past decade he had purchased approximately one-half kilogram of crack and one-half kilogram of cocaine from Green. Based on this information, on August 29, 2003, law enforcement officers arranged for North to make a controlled buy of fourteen grams of crack cocaine from Green.

On February 11, 2004, a federal grand jury returned a twelve-count indictment charging Green, North, and four other co-defendants with various drug offenses. J.A. 14-20. Count Ten charged that, on or about August 29, 2003, Green knowingly possessed and distributed five grams or more of cocaine base in

-2-

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).* Id. at 19. On June 21, 2004, Green pled guilty to Count Ten. Id. at 21-28.

On October 20, 2004, a sentencing hearing took place before the district court. However, at the hearing the parties disputed the extent of Green's involvement with North, and they agreed to continue the sentencing hearing until North could testify regarding the nature of his relationship with Green. Id. at 52. On November 4, 2004, North testified before the court about his drug transactions with Green. He stated that between 2001 and 2003, he had purchased drugs from Green "between six and ten" times. Id. at 99. He testified that he had never pre-arranged to buy drugs from Green, but that Green regularly came into town to conduct drug business on the weekends and North would try to catch him around town on these occasions. Id. at 98-99. North testified that he typically purchased either half an ounce or a full ounce of crack from Green. Id. at 101.

On February 3, 2005, the district court held another sentencing hearing. Based on North's testimony and the recommendation of the probation officer, the district court decided to attribute between 50 and 150 grams of crack cocaine to Green. Id. at 124. This resulted in Green being assigned an adjusted

---

*Green was also charged in Count One with conspiracy to possess with intent to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base. J.A. 14-15. This charge was dropped when Green agreed to plead guilty to Count Ten.

offense level of 29 instead of the offense level of 23 he would have been assigned had the district court considered only the fourteen grams involved in the sale to North to which Green pled guilty. With a criminal history category of II and an adjusted offense level of 29, the Sentencing Guidelines prescribed a range between 97 and 121 months. The district court sentenced Green to 97 months. Green filed a timely notice of appeal.

## II.

Green challenges his sentence on two grounds. First, he argues that the district court violated his Sixth Amendment right to a jury trial under United States v. Booker, 125 S. Ct. 738 (2005), by including in the calculation of his offense level the amount of drugs involved in his uncharged transactions with North. Second, he argues that even if there was no Sixth Amendment violation, the district court erred in considering the uncharged transactions because they do not constitute "relevant conduct" within the meaning of section 1B1.3(a)(2) of the Sentencing Guidelines. These arguments are without merit.

The district court did not violate the Sixth Amendment by considering the amount of drugs involved in Green's uncharged transactions with North. Booker held only that uncharged facts cannot be used "to support a sentence exceeding the [statutory] maximum," 125 S. Ct. at 756 (emphasis added), not, as Green

-4-

suggests, that a sentencing judge may not use uncharged facts to enhance the defendant's sentence <u>within the statutory range</u>. <u>Booker</u> obviously contemplates that sentencing judges can, consistent with the Sixth Amendment, rely on uncharged facts in determining an appropriate sentence within the statutory range. <u>See</u> <u>id</u>. at 750 ("[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."). Now that the Sentencing Guidelines are advisory, the relevant range is no longer the Guidelines range, but the range prescribed by statute. Here, that range was five to forty years. <u>See</u> 21 U.S.C. § 841(b)(1)(B). Because Green's 97-month sentence was within this statutory range, the district court's consideration of uncharged facts did not violate Green's Sixth Amendment right to trial by jury.

Green's claim that the uncharged transactions with North were not "relevant conduct" is equally meritless. For purposes of offenses, like Green's, where the offense level is determined by the amount of substance involved, "relevant conduct" is defined by section 1B1.3(a)(2) of the Sentencing Guidelines to include acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." Here, the offense of conviction was Green's sale of fourteen grams of crack cocaine to North. The uncharged facts considered by the district

court -- the series of drug transactions between Green and North over the course of the previous two years -- were obviously part of a common scheme to trade in illegal drugs. Green argues that his previous transactions with North were not part of a common scheme because they did not occur at regular intervals and were not planned ahead of time. We reject this argument. The fact that Green had repeatedly sold crack to North in the past was clearly "relevant conduct" in sentencing Green for his conviction for a specific incident of selling crack to North.

## CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>